Richard D. McCune, State Bar No. 132124
rdm@mccunewright.com
David C. Wright, State Bar No. 177468
dcw@mccunewright.com
Steven A. Haskins, State Bar. No. 238865
sah@mccunewright.com
Mark I. Richards, State Bar No. 321252
mir@mccunewright.com
**MᴄCᴜɴᴇ Wʀɪɢʜᴛ Aʀᴇᴠᴀʟᴏ ʟʟᴘ**
3281 Guasti Road, Suite 100
Ontario, California 91761
Telephone: (909) 557-1250
Facsimile:  (909) 557-1275

*Attorneys for Plaintiffs and the Putative Class*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE PANKOW, ARTHUR COHEN, BRUCE JAMES CANNON, MICHAEL HICKEY, and JOHN DEROSA, on behalf of themselves and all others similarly situated, and E.G.P., a minor, by and through her *Guardian ad Litem* MICHELLE PANKOW, individually, <br><br> Plaintiffs, <br><br> v. <br><br> GENERAL MOTORS, LLC; and Does 1 through 5, inclusive, <br><br> Defendants. | Case No.: 5:20-cv-2479 <br><br> **CLASS ACTION COMPLAINT** <br><br> 1. Violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq. <br><br> 2. Violations of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, et seq. <br><br> 3. Violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 <br><br> 4. Violation of California False Advertising Law, Cal. Bus. & Prof. Code § 17500, et seq. <br><br> 5. Breach of Express Warranty (Based on California Law) <br><br> 6. Breach of Express Warranty (Cal. Com. Code § 2313) <br><br> 7. Breach of Implied Warranty (Cal. Com. Code § 2314) <br><br> 8. Violations of the Song-Beverly Act – Breach of Implied Warranty, Cal. Civ. |

| | |
|---|---|
| 1 | Code §§ 1792, 1791.1, et seq.) |
| 2 | 9. Common Law Fraudulent Concealment (Based On California Law) |
| 3 | |
| 4 | 10. Violation of Illinois Consumer Fraud and Deceptive Business Practices Act (815 Ill. Comp. Stat. 505/1, *et seq*. and 720 Ill. |
| 5 | Comp. Stat. 295/A) |
| 6 | 11. Violation of the Illinois Uniform Deceptive Trade Practices Act (815 Ill. |
| 7 | Comp. Stat. 510/1, *et. seq*. and 720 Ill. Comp. Stat. 295/1A) |
| 8 | |
| 9 | 12. Breach of Implied Warranty of Merchantability (810 Ill. Comp. Stat. 5/2-314 and 810 Ill. Comp. Stat. 5/2A-212) |
| 10 | |
| 11 | 13. Breach of Express Warranties (810 Ill. Comp. Stat. 5/2-313) |
| 12 | 14. Fraudulent Concealment / Fraud by Omission (Based on Illinois Law) |
| 13 | |
| 14 | 15. Violation of the Consumer Protection Act (Rev. Code Wash. Ann. §§ 19.86.010, et seq.) |
| 15 | |
| 16 | 16. Breach of Express Warranty (Rev. Code Wash. § 62A.2-313) |
| 17 | 17. Breach of the Implied Warranty of Merchantability (Rev. Code Wash. |
| 18 | § 62A.2-314/315) |
| 19 | 18. Fraud by Concealment (Based on Washington Law) |
| 20 | |
| 21 | 19. Strict Product Liability (Based on California Law) |
| 22 | 20. Negligence (Based on California Law) |
| 23 | 21. Failure to Warn (Based on California Law) |
| 24 | |
| 25 | **DEMAND FOR JURY TRIAL** |
| 26 | |
| 27 | |
| 28 | |

Class Action Complaint
Case No.

# TABLE OF CONTENTS

*Page*

I    INTRODUCTION ................................................................. 1

II   JURISDICTION AND VENUE .......................................... 8

III  PARTIES ........................................................................... 8

    A.    Plaintiffs Michelle Pankow and E.G.P. ........................ 8

    B.    Plaintiff Arthur Cohen ................................................. 12

    C.    Plaintiff Bruce Cannon ................................................ 13

    D.    Plaintiff Michael Hickey ............................................. 13

    E.    Plaintiff John DeRosa .................................................. 14

    F.    Defendant General Motors Corporation ...................... 16

IV   FACTUAL ALLEGATIONS ............................................. 16

V    CLASS ACTION ALLEGATIONS .................................. 18

VI   CAUSES OF ACTION ...................................................... 21

    A.    Claims Brought on Behalf of the Nationwide Class ..................................... 21

          COUNT I: VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT ................ 21

    B.    Claims Brought on Behalf of the California Class ......... 23

          COUNT II: VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT ("CLRA") ........ 23

          COUNT III: VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW ......... 25

          COUNT IV: VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW ................. 26

          COUNT V: BREACH OF EXPRESS WARRANTY ................... 28

          COUNT VI: BREACH OF EXPRESS WARRANTY ................. 30

          COUNT VII: BREACH OF IMPLIED WARRANTY ................. 32

Class Action Complaint
Case No.

COUNT VIII: VIOLATION OF THE SONG-BEVERLY ACT –
BREACH OF IMPLIED WARRANTY ...............................34

COUNT IX: COMMON LAW FRAUDULENT CONCEALMENT 35

C.    Claims Brought on Behalf of the Illinois Class ...............................36

COUNT X: VIOLATION OF ILLINOIS CONSUMER FRAUD
AND DECEPTIVE BUSINESS PRACTICES ACT ..............36

COUNT XI: VIOLATION OF THE ILLINOIS UNIFORM
DECEPTIVE TRADE PRACTICES ACT ............................38

COUNT XII: BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY ......................................................40

COUNT XIII: BREACH OF EXPRESS WARRANTIES ................40

COUNT XIV: FRAUDULENT CONCEALMENT / FRAUD BY
OMISSION .......................................................................41

D.    Claims Brought on Behalf of the Washington Class ....................43

COUNT XV: VIOLATION OF THE CONSUMER PROTECTION
ACT .................................................................................43

COUNT XVI: BREACH OF EXPRESS WARRANTY ...................44

COUNT XVII: BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY ......................................................45

COUNT XVIII: FRAUD BY CONCEALMENT ............................46

E.    Claims Brought on Behalf of Individuals .....................................48

COUNT XIX: STRICT PRODUCT LIABILITY ...........................48

COUNT XX: NEGLIGENCE ........................................................49

COUNT XXI: FAILURE TO WARN .............................................51

PRAYER FOR RELIEF ...............................................................................52

JURY DEMAND ..........................................................................................53

-ii-

Class Action Complaint
Case No.

# CLASS ACTION COMPLAINT

Plaintiffs MICHELLE PANKOW, ARTHUR COHEN, BRUCE JAMES CANNON, MICHAEL HICKEY, and JOHN DEROSA, on behalf of themselves and on behalf of and a class of other similarly situated individuals, and E.G.P., a minor, by and through her guardian ad litem Michelle Pankow, on behalf of herself, complain of and allege the following causes of action against Defendant GENERAL MOTORS, LLC., ("GM" or "Defendant") a California Corporation; and DOES 1 through 50, inclusive, as follows:

## I    INTRODUCTION

1.    Plaintiffs MICHELLE PANKOW, ARTHUR COHEN, BRUCE JAMES CANNON, MICHAEL HICKEY, and JOHN DEROSA bring this class action on behalf of themselves individually and a class of current and former owners and lessees of 2017-2019 model year Chevrolet Bolt vehicles (collectively, the "Class Vehicles") that were marketed and sold with false representations regarding the Class Vehicles' battery life.[1] Plaintiff E.G.P. brings this action on behalf of herself individually.

2.    This action arises from the pervasive false advertisements disseminated by Defendant GM that overstate the potential battery mileage of the Class Vehicles because as it now acknowledges, the batteries within the Class Vehicles are dangerously defective in that they are susceptible to spontaneously igniting when fully or nearly fully charged ("Battery Defect").

3.    This action also alleges claims resulting from injuries suffered uniquely by Plaintiffs Michelle Pankow and E.G.P. from damages caused by the failure of the battery in Plaintiff Pankow's car, which caused extensive damage to her home and caused physical and emotional damage to both herself and her two-year-old daughter, Plaintiff E.G.P.

---

[1] Plaintiffs reserve the right to amend or add to the vehicle models included in the definition of Class Vehicles after conducting discovery.

-1-

4. In 2017, Defendant GM introduced a new plug-in, all-electric vehicle called the Chevrolet Bolt. The Bolt was GM's version of an all-electric vehicle competing with emerging all-electric vehicle lines promoted by new market entrants like Tesla, Nissan, and BMW. The automobile was a critics' darling, capturing the 2017 Motor Trend Car of the Year and the North American Car of the Year awards. These accolades were awarded in no small part because GM claimed it had designed and manufactured a battery that increased the automobile's range on a single battery charge.

5. To successfully market an all-electric vehicle, increased range is critical. Because battery charging takes more time than re-filling a gasoline tank, an all-electric vehicle's usefulness is directly related to the distance the automobile can travel before needing a recharge. Therefore, electric car buyers particularly rely on manufacturer representations regarding the automobile's ability to travel on a single charge. Indeed, price and range are two primary considerations of consumers when deciding to purchase an electric vehicle.

6. When Defendant began selling the Class Vehicles to the general public, it represented that each vehicle had a travel range of 238 miles without recharging. Defendant has made that same representation since it started marketing the Bolt to the general public.

7. For instance, at the time of the 2017 Chevrolet Bolt's release, GM published a specifications sheet disclosing that the vehicle was able to maintain a driving range of an "EPA-estimated 238 miles."[2] The accompanying "product information" fact sheet regarding the 2017 Bolt confirmed that it "offers an EPA-estimated 238 miles of range."[3]

8. The same was true for the 2018 Chevrolet Bolt's release, in which GM published the same specifications sheet disclosing the vehicle's alleged EPA-estimated

---

[2] See https://media.chevrolet.com/media/us/en/chevrolet/vehicles/bolt-ev/2017.tab1.html (last visited November 23, 2020).
[3] See https://media.chevrolet.com/media/us/en/chevrolet/vehicles/bolt-ev/2017.tab1.html (last visited November 23, 2020).

-2-

238-mile battery range,[4] and further reiterated the 238-mile range on its product information fact sheet.[5]

9.     GM also made the Bolt's 238-mile driving range part of its national advertising campaign. For example, GM featured the Bolt in television advertisements that expressly touted the Bolt's 238-mile range.[6] Print advertisements, such as this advertisement placed in a June 2017 edition of the Washington Post, also touted the Bolt's 238-mile range capability.



[4] See https://media.chevrolet.com/media/us/en/chevrolet/vehicles/bolt-ev/2018.tab1.html (last visited November 23, 2020).
[5] See https://media.chevrolet.com/media/us/en/chevrolet/vehicles/bolt-ev/2018.tab1.html (last visited November 23, 2020).
[6] See https://www.youtube.com/watch?v=3rmwSwsAmsY (last visited November 23, 2020).

Class Action Complaint
Case No.

10.      Lithium ion batteries are a key component of electric vehicles, such as the Chevrolet Bolt because of their high specific energy, high power, and long life cycle. However, safety concerns related to unexpected fires have been well documented— including a battery fire that happened weeks after the crash test of a Chevrolet Volt in 2011 and several Tesla Model S that suddenly caught fire while parked in 2019—and are known to GM.

11.      In the United States, the National Transportation Safety Board reported 17 Tesla and 3 BMW i3 lithium ion battery fires to the United Nations Economic Commission for Europe's Electrical Vehicle Safety International Working Group.

12.      Lithium ion battery fires are especially dangerous because they pose fire hazards which are significantly different to other fire hazards in terms of initiation, spread, duration, toxicity, and extinction.

13.      Significantly, the documented fires in the Chevrolet Bolt vehicles has not been the result of external abuse, but rather, has resulted from an internal failure while the cars are parked. This type of spontaneous ignition caused by thermal runaway has been reported to cause as much as 80% of lithium ion battery fires.

14.      Unfortunately, GM traded safety concerns for increased range, pushing the Bolt's range beyond the battery's capability in order to market the vehicle's battery range. Despite warnings published by the National Highway Traffic Safety Administration, in October 2017, that overcharging lithium ion batteries can result in one of several exothermic reactions that have the potential to initiate thermal runaway resulting in the spontaneous ignition.

15.      According to the National Highway Traffic Safety Administration, proper management of the electrical loads (i.e., electrical balancing) among cells in a pack helps maintain overall charge and discharge performance within an acceptable range, and prevent over discharge or overcharge conditions. Because temperature is a key indicator of cell electrical performance (e.g., hotter cells may discharge or charge more quickly than colder cells), thermal management strategies must be integrated into the battery

-4-

system design to monitor charging and discharging events and mitigate potentially problematic conditions.

16. Plaintiffs allege that the lithium ion batteries and related management systems of the Class Vehicles are defective and unsafe in that they are inadequate to prevent thermal runaway and spontaneous ignition of the batteries in the Class Vehicles.

17. GM has known since early 2018 that there were defects in batteries and energy management systems. On April 2, 2018, GM Chevrolet issued a customer satisfaction notice for drivers of 2017 Bolts to get a software update to provide more warning about any potential "cell low-voltage condition" and loss of propulsion.

18. On May 11, 2018, GM released a new software update for all Bolt owners to "provide additional warnings.

19. And in August 2018, GM issued another Customer Satisfaction Program, stating: "Certain 2017-2018 model year Bolt EV vehicles may have a condition where the software will not detect the difference in the state of charge between the cell groups of the battery and over predict the indicated battery range. The current software may not provide sufficient warning prior to a battery cell low range condition, which may result in a loss of propulsion. Only certain vehicles will experience the battery low voltage cell condition."

20. In a 2019 interview with InsideEvs, GM's chief engineer of electric propulsion systems acknowledged the loss of propulsion problems stemmed from the Bolt's battery misbalancing problems.

21. As time passed, it became harder and harder for GM to hide the Battery Defect from the general public. Finally, from July 20, 2020, to August 26, 2020, GM received at least four claims alleging that the Class Vehicles' battery pack had caused a fire. Indeed, GM has now identified at least a dozen battery-related allegations of fire involving 2017-2019 Bolt vehicles, and its internal investigations (spanning from August-November 2020, according to GM) have revealed that in at least five of those

cases the fire was related to the battery. In four such cases, the fire occurred when the battery was highly charged just before the fire occurred.

22.     On November 13, 2020, GM announced to all of its authorized dealers its intent to recall over 50,000 Chevrolet Bolt vehicles equipped with design-level N2.1 batteries produced at LG Chem's Ochang, Korea plant. GM had concluded through its own investigation that the battery pack posed a risk of fire when charged to full, or very close to full, capacity.

23.     The announced recall will cover all Class Vehicles manufactured with design level N2.1 batteries produced by the Ochang plant. According to GM, it did not use design level N2.1 battery cells after the 2019 model year.

24.     Rather than issue a recall in order to replace the unreasonably dangerous N2.1 batteries, GM has informed the National Highway Traffic Safety Administration (NHTSA) that the purpose of the recall is to install an interim software fix that calls for reprogramming the hybrid propulsion system control module to limit the battery's range to approximately 214 miles on a single battery charge. At the very least, this programming change will drop the vehicle's total range on a single charge approximately 10%. Prior to taking their vehicles in for reprogramming, GM has recommended that owners of the Class Vehicles enable either "Hilltop Reserve" or "Target Charge Level" mode on their vehicles, both of which are other ways of limiting the batteries' charge to 90%. GM recommends that if vehicle owners are unable to make these changes to limit the charging level of their vehicles, they should not park their car in their garage or carport until after they have visited their dealer.

25.     Cell battery imbalances and/or defects in a battery management system can lead to thermal runaway in battery cells, thereby creating an increased risk of fire. GM has been aware of battery cell imbalances and/or problems with the battery management system of the Class Vehicles' since at least 2017. Indeed, customers have reported failed battery cells and problems indicating defects in the batteries of the Class Vehicles for several years prior to GM's recall.

-6-

26.     Despite its knowledge, GM failed to notify Plaintiffs and the Class members these problems and associated hazards at the time of purchasing their vehicles. Instead, GM did not perform its recall until several fires occurred in the Class Vehicles. Of course, delaying the recall of the Class Vehicles was to avoid the financial fallout from having to acknowledge that the Class Vehicles and its batteries were simply incapable of *safely* providing customers with GM's long advertised 238 mile driving range.

27.     GM has actively concealed the fact that its representations regarding the Class Vehicles' battery range were false, based only on unreasonable usage of the battery to the extent that it vastly increased the risk of fire even while the Class Vehicles are in operation. GM failed to disclose that the existence of the Battery Defect would diminish owners' usage of the Class Vehicles, as well as their intrinsic and resale value.

28.     GM knew or should have known that the Class Vehicles were being advertised and sold with false and misleading representations regarding the range of the Class Vehicles and the risk of fire posed by the defective batteries. Yet, notwithstanding its knowledge, GM has failed to compensate owners and lessees who purchased the Class Vehicles. Instead, GM has implemented a solution reducing the range of the Class Vehicles 10% below what was advertised.

29.     As a result of GM's unfair, deceptive and/or fraudulent business practices, owners and/or lessees of the Class Vehicles, including Plaintiffs, have suffered an ascertainable loss of money and/or property and/or loss in value. The unfair and deceptive trade practices GM has committed were conducted in a manner giving rise to substantial aggravating circumstances.

30.     Had Plaintiffs and other Class members known at the time of purchase or lease of the true range of the Class Vehicles and the propensity of the batteries installed in the Class Vehicles' to burst into flame, they would not have bought or leased the Class Vehicles, or would have paid substantially less for them.

Class Action Complaint
Case No.

31.     As a result of the lower ratings and the monetary costs associated therewith, Plaintiffs and the Class members have suffered injury in fact, incurred damages, and have otherwise been harmed by GM's conduct.

32.     Accordingly, Plaintiffs bring this action to redress GM's violations of the Magnusson Moss Warranty Act and consumer protection statutes of the states of California, Illinois, and Washington, and also seeks recovery for GM's unjust enrichment and breaches of express warranty and implied warranty.

## II     JURISDICTION AND VENUE

33.     This Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(a) and (d) because the amount in controversy for the Class exceeds $5,000,000 and Plaintiffs and other putative class members are citizens of a different state than Defendant.

34.     This Court has personal jurisdiction over Plaintiffs because Plaintiffs reside in this District and submit to the Court's jurisdiction. This Court has personal jurisdiction over Defendant General Motors, LLC, because it conducted and continues to conduct substantial business in the District, and because it has committed the acts and omissions complained of herein in the District, including the marketing and leasing of the Class Vehicles in this District.

35.     Venue as to Defendant is proper in this judicial district under 28 U.S.C § 1391 because Defendant sells a substantial number of automobiles in this District, has dealerships in this District, and many of Defendant's acts complained of herein occurred within this District, including the marketing and leasing of the Class Vehicles to Plaintiffs and members of the putative Class in this district.

## III     PARTIES

**A.     Plaintiffs Michelle Pankow and E.G.P.**

36.     Plaintiffs Michelle Pankow and E.G.P. are residents and citizens of Temecula, California.

37.     In September 2017, Plaintiff Michelle Pankow purchased a new 2017 Chevrolet Bolt from Paradise Chevrolet in Temecula, California.

38.     Plaintiff made the decision to purchase the Chevrolet Bolt after considering GM's representations about the vehicle, including comparisons of GM's representations about the range of the vehicle when compared with other similar all-electric vehicles. Plaintiff Pankow also reviewed the "driving range" data set forth in the new vehicle Monroney sticker, when deciding whether to purchase the Bolt or another vehicle. The Monroney sticker explained that when "fully charged" the Bolt could travel a total of 238 miles on a single battery charge.

39.     Had GM disclosed the defect in its battery causing a lower range for a single charge or the batteries' propensity to burst into flame, Plaintiff Pankow would not have purchased the Bolt or would have paid substantially less for it.

40.     Pursuant to all of the instructions given with the vehicle's purchase, Plaintiff Pankow and her husband charge the vehicle every night using a 220-volt charging system they purchased from the dealer and installed in their garage. The vehicle would then charge to full capacity every evening, which resulted in the vehicle expressing a total stated driving range of anywhere from 230 to 238 miles.

41.     This pattern held for several years, until sometime in Summer 2020 the vehicle would only show a projected range of 170 miles when fully charged. The Pankows took the vehicle to Paradise to have the problem diagnosed. After technicians ran diagnostic tests, they claimed that nothing was wrong with the battery itself but explained that they had updated the computer system.

42.     The Pankows took the vehicle home and again charged it overnight, but the vehicle still continued to show a range of only 170 miles when fully charged. The Pankows returned to Paradise Chevrolet for an additional round of service.

43.     At this point, the Pankows were told that there was nothing that could be done for the battery because the diagnostics had already been run with no result, and thus

the decrease in range was most likely caused by some degradation of the battery's ability to hold a charge combined with then-prevailing weather conditions.

44. Understandably upset with this answer, Michelle called GM's customer service line, where she reported the problem with her battery and complained about Paradise's handling of it. On that call, GM representatives explained for the first time that the battery's depreciation was supposedly "normal," and that it could lose 40% of its range over time and GM would consider it to be operating normally.

45. At all relevant times herein, Plaintiff Pankow's vehicle was covered by GM's new vehicle limited warranty, including the 8-year/100,000 new vehicle limited warranty on electric components. GM's new vehicle limited warranty covers "repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period" and provides that "[w]arranty repairs, including towing, parts, and labor, will be made at no charge."

46. On July 30, 2020, Michelle—then nine months pregnant—was home alone with her daughter, E.G.P., and the family's dog while Michelle's husband was out of town on business. As she was lying in bed in her bedroom, situated directly over the garage where the family vehicle was parked every night for charging purposes, she heard a faint "whoosh" sound coming from the garage.

47. She got up to investigate the sound. When she opened the door from the kitchen to the garage, smoke poured into the house from the garage. She opened the garage door to release the smoke, then managed to unplug the charging station hoping that would abate the fire. Michelle then ran back upstairs to evacuate her daughter and the dog from the house. Fortunately, they were able to evacuate but watched their house burn from the street in front of it. At one point, the family observed an explosion coming from the garage that caused the garage door to close.

48. The fire department responded and put out the structure fire, but not before everything in the garage was destroyed, including the vehicle.



49.    The resulting combination of fire, smoke, and water damage render the house a near total loss—the structure will be saved but will have to be torn down to the studs and rebuilt. Fire officials traced the fire's origin to the floor of the vehicle underneath the rear seats—the exact location of the Bolt's battery pack.



Class Action Complaint
Case No.

50.     Michelle suffered smoke inhalation and both her and her daughter have severe post-traumatic stress disorder resulting from the incident. E.G.P. continues to express fear and is afraid to return to the home.

51.     As a result of the fire, the Pankows filed a report with NHTSA and a formal complaint with Defendant. GM has not responded to her complaint.

**B.     Plaintiff Arthur Cohen**

52.     Plaintiff Arthur Cohen is a resident and citizen of Morgan Hill, California. Plaintiff Cohen leased a 2018 Chevrolet Bolt from Fremont Chevy, in Fremont, California, on March 17, 2018.

53.     Plaintiff Cohen made the decision to purchase the Bolt after considering GM's representations about the vehicle, including comparisons of GM's representations about the range of the vehicle when compared with other similar all-electric vehicles. Plaintiff Cohen also reviewed the "driving range" data set forth in the new vehicle's Monroney ("window") sticker, when deciding whether to purchase the Bolt or another vehicle. The Monroney sticker explained that when "fully charged" the Bolt could travel a total of 238 miles on a single battery charge.

54.     Had GM disclosed the defect in its battery causing the consumer to choose between a lower range for a single charge or risk the batteries bursting into flame, Plaintiff Cohen would not have purchased the Bolt or would have paid substantially less for it.

55.     At all relevant times herein, Plaintiff Cohen's vehicle was covered by GM's new vehicle limited warranty, including the 8-year/100,000 new vehicle limited warranty on electric components. GM's new vehicle limited warranty covers "repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period" and provides that "[w]arranty repairs, including towing, parts, and labor, will be made at no charge."

Class Action Complaint
Case No.

## C.    Plaintiff Bruce Cannon

56.    Plaintiff Bruce Cannon is a resident and citizen of El Segundo, California.

57.    In December 2018, Plaintiff Cannon and his wife purchased and took possession of a 2019 Chevrolet Bolt.

58.    Plaintiff Cannon made the decision to purchase the Chevrolet Bolt after considering GM's representations about the vehicle, including comparisons of GM's representations about the range of the vehicle when compared with other similar all-electric vehicles. Plaintiff Cannon also reviewed the "driving range" data set forth in the new vehicle Monroney ("window") sticker, when deciding whether to purchase the Bolt or another vehicle. The Monroney sticker explained that when "fully charged" the Bolt could travel a total of 238 miles on a single battery charge.

59.    Had GM disclosed the defect in its battery causing a lower range for a single charge or the batteries' propensity to burst into flame, Plaintiff Cannon would not have purchased the Bolt or would have paid substantially less for it.

60.    At all relevant times herein, Plaintiff Cannon's vehicle was covered by General Motors new vehicle limited warranty, including the 8-year/100,000 new vehicle limited warranty on electric components. General Motors' new vehicle limited warranty covers "repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period" and provides that "[w]arranty repairs, including towing, parts, and labor, will be made at no charge."

## D.    Plaintiff Michael Hickey

61.    Plaintiff Michael Hickey is a resident and citizen of Gorham, Illinois.

62.    In December 2018, Plaintiff purchased and took possession of a used 2017 Chevrolet Bolt with approximately 25,000 miles from an authorized General Motors dealership, Holm Automotive Center, in Abilene, Kansas.

63.    Plaintiff made the decision to purchase the Chevrolet Bolt after considering GM's representations about the vehicle, including comparisons of GM's representations

about the 238-mile range of the vehicle when compared with other similar all-electric vehicles.

64.     Had GM disclosed the defect in its battery causing a lower range for a single charge or the batteries' propensity to burst into flame, Plaintiff would not have purchased the Bolt or would have paid substantially less for it.

65.     Shortly after the purchase, Plaintiff Hickey observed that his vehicle was showing a range of only 175 miles on a full charge, in contrast with the 238-mile range that GM had advertised.

66.     Plaintiff Hickey presented his vehicle to authorized GM dealership Vic Koenig Chevrolet, in Carbondale, Illinois, complaining of the battery issue and requested that GM replace the battery pack. Plaintiff Hickey was told that the batteries were operating normally and that GM would not replace the battery pack.

67.     Following the instructions pursuant to GM's notice of recall, Plaintiff Hickey set the mode for his vehicle to "Hilltop Reserve" and can travel 145 miles on a single charge.

68.     At all relevant times herein, Plaintiff Hickey's vehicle was covered by GM's new vehicle limited warranty, including the 8-year/100,000 new vehicle limited warranty on electric components. GM's new vehicle limited warranty covers "repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period" and provides that "[w]arranty repairs, including towing, parts, and labor, will be made at no charge." Furthermore, GM's warranty provides that "[i]n addition to the initial owner of the vehicle, the coverage described in this Chevrolet Bolt, Bolt EV, and Malibu Hybrid warranty is transferable at no cost to any subsequent person(s) who assumes ownership of the vehicle within the 8 years or 100,000 miles term."

**E.     Plaintiff John DeRosa**

69.     Plaintiff John DeRosa is a resident and citizen of Seattle, Washington. Plaintiff DeRosa purchased and took possession of a new 2019 Chevrolet Bolt, on

-14-

December 30, 2018, from GM-authorized dealership Bill Pierre Chevrolet, in Seattle, Washington. Plaintiff DeRosa made the decision to purchase the Chevrolet Bolt after considering GM's representations about the vehicle, including comparisons of GM's representations about the range of the vehicle when compared with other similar all-electric vehicles, including the Nissan Leaf, BMW i3, and Tesla Model 3. Plaintiff DeRosa also reviewed the "driving range" data set forth in the new vehicle Monroney ("window") sticker, when deciding whether to purchase the Bolt or another vehicle. The Monroney sticker explained that when "fully charged" the Bolt could travel a total of 238 miles on a single battery charge.

70.     Vehicle range and price were the two most significant factors for Plaintiff DeRosa in making his electric vehicle purchase. Had GM disclosed the defect in its battery causing a lower range for a single charge or the batteries' propensity to burst into flame, Plaintiff DeRosa would not have purchased the Bolt or would have paid substantially less for it.

71.     Vehicle range is particularly important to Plaintiff DeRosa as the Bolt is the family's only vehicle. Plaintiff DeRosa does not own a traditional gasoline powered vehicle as an alternative to use for long trips. Having the vehicle's full range is important to Plaintiff DeRosa as without it he would not be able to take the family to places they normally travel on vacations and get-aways, such as the Oregon coast, the Olympic Peninsula, Fall City, Maltby, and other destinations without having to choose between making extended stops to recharge or attempting to make the trip in one charge with no safety margin to allow for traffic, accidents, or the additional weight of travelling with the entire family in the vehicle.

72.     Plaintiff DeRosa received a notice of recall from GM leaving him with the option of reducing the vehicle's range by not fully charging its batteries or running the risk of his vehicle's batteries bursting into flames.

73.     The timing of this recall, whereby the range of Plaintiff DeRosa's vehicle will be reduced, is further exacerbated by it coming as the onset of the winter season

-15-

when Plaintiff DeRosa already experiences a 15% reduction of range as a result of the colder winter temperatures.

**F.      Defendant General Motors Corporation**

74.     Defendant GM is a limited liability company organized under Delaware law with its principal office located at 300 Renaissance Center, Detroit, Michigan 48265. Defendant designs, tests, manufactures, distributes, warrants, sells, and leases various vehicles under several prominent brand names, including but not limited to Chevrolet, Buick, GMC, and Cadillac this district and throughout the United States

**IV      FACTUAL ALLEGATIONS**

75.     Under regulations issued by the United States Environmental Protection Agency, every new car and truck or SUV up to 10,000 pounds sold in the United States must have a fuel economy label or window sticker that contains certain information about the vehicles. Included among this information for electric vehicles is a vehicle's miles-per-gallon ("MPG") equivalent estimates, which converts the range of the vehicle's battery into an equivalent mileage as measured by miles per gallon. These ratings have been given to consumers since the 1970s and are posted for the customers' benefit to help them make valid comparisons between vehicles' MPGs when shopping for a new vehicle. This is particularly important for electric vehicles, as consumers generally pay a premium for electric vehicles as compared to gasoline-powered vehicles, and one reason for that premium is the accrued savings over time of driving an electric over a gasoline-powered vehicle.

76.     Automobile manufacturers are required by law to prominently affix a label called a "Monroney sticker" to each new vehicle sold. The Monroney sticker sets forth, the vehicle's fuel economy (expressed in MPGe for electric vehicles), the driving range, estimated annual fuel costs, the fuel economy range of similar vehicles, and a statement that a booklet is available at the dealership to assist in comparing the fuel economy of vehicles from all manufacturers for that model year, along with pricing and other information.

Class Action Complaint
Case No.

77. Prior to 2020, GM advertised the Class Vehicles' driving range as being 238 miles in order to compete in the electric vehicle market. GM had spent millions of dollars designing and manufacturing the Bolt as a competitor to other electric vehicles in the marketplace, and one of the ways that GM decided to distinguish the Bolt from other vehicles was the driving range of the vehicle on a single charge.

78. The fire started by the Pankows' vehicle that destroyed their home demonstrates the risks posed by the Battery Defect. In order to maximize the Bolt's battery range, GM sacrificed safety and threatened both Bolt owners and their property.

79. Now, of course, GM has put Bolt owners in a conundrum. GM's purported software fix will decrease the range of the vehicle such that owners will not be able to drive as far without recharging their battery, thus incurring extra time and cost to recharge their vehicle than promised when they purchased it. And Bolt owners can have no true assurances that the "software fix" actually fixes the problem. They are instead required to continue using the same batteries that caused the fires alleged in this complaint, including the Pankow fire.

80. Defendant has stated that it intends to recall over 50,000 of the Class Vehicles and implement the supposed software fix. As a result, each and every one of the Class Vehicles will lose 10% more of its driving range.

81. Each Plaintiff that purchased a Class Vehicle, as well as members of the putative Class, reasonably relied on Defendant's material, yet false, representations regarding the Class Vehicles' range and equivalent miles per gallon.

82. A reasonable consumer would expect and rely on GM's advertisements, including the new vehicle Monroney stickers, to truthfully and accurately reflect the Class Vehicles' driving range. Further, a reasonable consumer in today's market attaches material importance to the advertisements of electric mileage, as energy efficiency is one of the most, if not the most, important considerations in making a purchase or lease decision for most consumers.

Class Action Complaint
Case No.

# V    CLASS ACTION ALLEGATIONS

83.    Plaintiffs bring this action on their own behalf, and on behalf of a nationwide class pursuant to Federal Rules of Civil Procedure, Rules 23(a), 23(b)(2), and/or 23(b)(3).

**Nationwide Class:**

> All persons or entities in the United States who are current or former owners and/or lessees of a Class Vehicle.

84.    In the alternative to the Nationwide Class, and pursuant to Federal Rules of Civil Procedure, Rule 23(c)(5), Plaintiffs seek to represent the following classes of consumers:

**California Class:**

> All persons or entities in the state of California who purchased or leased a Class Vehicle.

**Illinois Class:**

> All persons or entities in the state of Illinois who purchased or leased a Class Vehicle.

**Washington Class:**

> All persons or entities in the state of Washington who purchased or leased a Class Vehicle.

85.    Together, the Nationwide Class and the described statewide classes shall be collectively referred to herein as the "Class." Excluded from the Class are GM, its affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change, or expand the Class definitions based on discovery and further investigation.

86.    <u>Numerosity</u>:  Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the

GM's sole possession and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that hundreds of thousands of Class Vehicles have been sold and leased in states that are the subject of the Class.

87.     <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to, whether:

      a.     The Class Vehicles were sold with defects;

      b.     GM knew about the Battery Defect but failed to disclose it and its consequences to GM customers;

      c.     A reasonable consumer would consider the defect or its consequences to be material;

      d.     GM should have disclosed the Battery Defect's existence and its consequences; and

      e.     GM's conduct violates the California Legal Remedies Act, California Unfair Competition Law, and the other statutes asserted herein.

88.     <u>Typicality</u>:  Plaintiffs' claims related to the alleged software reprogramming and resulting limitation of the Class Vehicles' driving range are typical of the claims of the Class because Plaintiffs purchased their vehicles with the same battery defect as other Class members, and each vehicle must receive the alleged software reprogramming. Furthermore, Plaintiffs and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of GM's wrongful conduct by limiting the Class Vehicles' driving range below the advertised distance. Plaintiffs advance these same claims and legal theories on behalf of themselves and all absent Class members.

89.     <u>Adequacy</u>:  Plaintiffs adequately represent the Class because their interests do not conflict with the interests of the Class they seek to represent, they have retained counsel who are competent and highly experienced in complex class action litigation, and

Class Action Complaint
Case No.

they intend to prosecute this action vigorously. Plaintiffs and their counsel are well-suited to fairly and adequately protect the interests of the Class.

90. <u>Superiority</u>: A class action is superior to all other available means of fairly and efficiently adjudicating the claims brought by Plaintiffs and the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by GM's conduct. It would be virtually impossible for Class members on an individual basis to effectively redress the wrongs done to them. Even if Class members could afford such individual litigation, the courts cannot. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system, particularly where the subject matter of the case may be technically complex. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, individual Class members can be readily identified and notified based on, *inter alia*, GM's vehicle identification numbers, warranty claims, registration records, and database of complaints.

91. GM has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

Class Action Complaint
Case No.

# VI    CAUSES OF ACTION

**A.    Claims Brought on Behalf of the Nationwide Class**

## COUNT I:

## VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT

## (15 U.S.C. § 2301, *et seq.*)

**(By All Plaintiffs on behalf of the Nationwide Class, or alternatively, the California Class)**

92.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

93.    Plaintiffs bring this claim on behalf of themselves and on behalf of the Nationwide Class or, alternatively, on behalf of the California Class.

94.    Plaintiffs and the Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

95.    Defendant is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5).

96.    The Class Vehicles, including Plaintiffs' vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

97.    Defendant's 3 year/36,000 mile "bumper to bumper" new vehicle limited warranty is a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

98.    Defendant's 5 year/60,000 mile powertrain new vehicle limited warranty is a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

99.    Defendant's 8 year/100,000 mile electric vehicle component new vehicle limited warranty is a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

100.    Defendant breached its express warranties by:

    a.    Selling and leasing Class Vehicles with a battery that was defective in materials and/or workmanship, requiring repair or replacement within the warranty period; and

-21-

b.   Refusing and/or failing to honor the express warranties by repairing or replacing the battery without leaving the Class Vehicles with the same capability as advertised to the purchasers.

101.   Plaintiffs and the other Class members relied on the existence and length of the express warranties in deciding whether to purchase or lease the Class Vehicles.

102.   Defendant's breach of its express warranties has deprived Plaintiffs and the other Class members of the benefit of their bargain.

103.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

104.   Defendant has been given reasonable opportunity to cure its breach of the written warranties. Alternatively, Plaintiffs and the other Class members are not required to do so because affording Defendant a reasonable opportunity to cure its breach of written warranties was, and is, futile.

105.   As a direct and proximate cause of Defendant's breach of the written warranties, Plaintiffs and the other Class members sustained damages and other losses in an amount to be determined at trial.  Defendant's conduct damaged Plaintiffs and the other Class members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, including statutory attorney fees and/or other relief as deemed appropriate.

**B. Claims Brought on Behalf of the California Class**

**COUNT II:**

**VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT ("CLRA")**

**(Cal. Civ. Code § 1750, *et seq*.)**

**(By Plaintiffs Pankow, Cohen, and Cannon on behalf of the Nationwide Class, or alternatively, the California Class)**

106.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

107.   Plaintiffs Pankow, Cohen, and Cannon bring this claim on behalf of themselves and on behalf of the members of the Nationwide Class and the California Class.

108.   Defendant is a "person" as that term is defined in California Civil Code § 1761(c).

109.   Plaintiffs and the Class members are "consumers" as that term is defined in California Civil Code §1761(d).

110.   Defendant engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, and by knowingly and intentionally concealing from Plaintiffs and Class members that the Class Vehicles suffer from a defect(s) (and the costs, risks, and diminished value of the vehicles as a result of this problem). These acts and practices violate, at a minimum, the following sections of the CLRA:

- (a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;

- (a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

-23-

- • (a)(9) Advertising goods and services with the intent not to sell them as advertised.

111.   Defendant's unfair or deceptive acts or practices occurred repeatedly in its trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

112.   Defendant knew that the Class Vehicles' batteries were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

113.   Defendant had the duty to Plaintiffs and the Class members to disclose the battery defect and the defective nature of the Class Vehicles because:

a.   Defendant was in a superior position to know the true state of facts about the Battery Defect and its associated costs;

b.   Plaintiffs and the Class members could not reasonably have been expected to learn or discover that the Class Vehicles had defects until those defects became manifest;

c.   Defendant knew that Plaintiffs and the Class members could not reasonably have been expected to learn about or discover the Battery Defect and the effect it would have on the Class Vehicles' range and energy efficiency.

114.   In failing to disclose the Battery Defect and its resulting safety risks and efficiency decreases, Defendant has knowingly and intentionally concealed material facts and breached its duty to disclose.

115.   The facts Defendant concealed or did not disclose to Plaintiff and the Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Vehicles or pay a lesser price. Had Plaintiff and the Class known the Class Vehicles were defective, they would not have purchased the Class Vehicles or would have paid less for them.

116.   Plaintiffs Pankow, Cohen, and Cannon all provided Defendant with notice of its CLRA violation pursuant to California Civil Code § 1782(a) on November 25, 2020.

-24-

117. Defendant's fraudulent and deceptive business practices proximately caused injuries to Plaintiffs and the other Class members.

118. Therefore, Plaintiffs and the other Class members seek only equitable relief under the CLRA at this time.

**COUNT III:**

**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**(Cal. Bus. & Prof. Code § 17200)**
**(By Plaintiffs Pankow, Cohen, and Cannon on behalf of the Nationwide Class, or alternatively, the California Class)**

119. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

120. 84. Plaintiffs Pankow, Cohen, and Cannon bring this claim on behalf of themselves and on behalf of the members of the Nationwide Class and the California Class.

121. The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

122. Defendant has engaged in unfair competition and unfair, unlawful, or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiffs and other Class members that the Class Vehicles suffer from the battery (and the loss of efficiency, safety risks, and diminished value of the vehicles that result from the defect). Defendant should have disclosed this information because it was in a superior position to know the true facts related to the defect, and Plaintiffs and Class members could not have been reasonably expected to learn or discover these true facts.

123. The defect constitutes a safety issue triggering GM's duty to disclose.

124. By its acts and practices, Defendant has deceived Plaintiffs and is likely to have deceived the public. In failing to disclose the Battery Defect and suppressing other

-25-

material facts from Plaintiffs and other Class members, Defendant breached its duty to disclose these facts, violated the UCL, and caused injuries to Defendant and the Class members. Defendant's omissions and acts of concealment pertained to information material to Plaintiffs and other Class members, as it would have been to all reasonable consumers.

125.   The injuries Plaintiff and the Class members suffered greatly outweigh any potential countervailing benefit to consumers or to competition, and they are not injuries that Plaintiffs and the Class members could or should have reasonably avoided.

126.   Defendant's acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750 *et seq.*, and California Commercial Code § 2313.

127.   Plaintiffs seek to enjoin Defendant from further unlawful, unfair, and/or fraudulent acts or practices, to obtain restitutionary disgorgement of all monies and revenues GM has generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200.

**COUNT IV**

**VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW**

**(Cal. Bus. & Prof. Code § 17500, *et seq.*)**

**(By Plaintiffs Pankow, Cohen, and Cannon on behalf of the Nationwide Class, or alternatively, the California Class)**

128.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

129.   Plaintiffs Pankow, Cohen, and Cannon bring this claim on behalf of themselves and on behalf of the Members of the Nationwide Class and the California Class.

130.   California Business & Professions Code § 17500 states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or

Class Action Complaint
Case No.

disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

131.   Defendant caused to be made or disseminated through California and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care Defendant should have known to be untrue and misleading to consumers, including Plaintiff and other Class members.

132.   Defendant has violated section 17500 because its misrepresentations and omissions regarding the safety, reliability, functionality, and energy efficiencies of the Class Vehicles were material and likely to deceive a reasonable consumer.

133.   Plaintiffs and the other Class members have suffered injuries in fact, including the loss of money or property, resulting from Defendant's unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Class Vehicles, Plaintiffs and the other Class members relied on Defendant's misrepresentations and/or omissions with respect to the Class Vehicles' safety and reliability. Defendant's representations were untrue because it distributed the Class Vehicles with the Battery Defect. Had Plaintiffs and the other Class members known this, they would not have purchased or leased the Class Vehicles or would not have paid as much for them. Accordingly, Plaintiffs and the other Class members did not receive the benefit of their bargain.

134.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of GM's business. GM's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the state of California and nationwide.

135.   Plaintiffs, individually and on behalf of the other Class members, request that the Court enter such orders or judgments as may be necessary to enjoin Defendant

Class Action Complaint
Case No.

from continuing its unfair, unlawful, and/or deceptive practices, and restore to Plaintiffs and the other Class members any money Defendant acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

## COUNT V:

## BREACH OF EXPRESS WARRANTY

### (Based on California Law)

### (By Plaintiffs Pankow, Cohen, and Cannon on behalf of the Nationwide Class, or alternatively, the California Class)

136. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

137. Plaintiffs Pankow, Cohen, and Cannon bring this claim on behalf of themselves and on behalf of the members of the Nationwide Class and the California Class.

138. Defendant provided all purchasers and lessees of the Class Vehicles with the express warranties described herein, which became part of the basis of the parties' bargain. Accordingly, Defendant's warranties are express warranties under state law.

139. Specifically, the Class Vehicles are covered by General Motors' new vehicle limited warranty, including the 8-year/100,000 new vehicle limited warranty on electric components. The new vehicle limited warranty covers "repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period" and provides that "[w]arranty repairs, including towing, parts, and labor, will be made at no charge." Furthermore, GM's warranty provides that "[i]n addition to the initial owner of the vehicle, the coverage described in this Chevrolet Bolt, Bolt EV, and Malibu Hybrid warranty is transferable at no cost to any subsequent person(s) who assumes ownership of the vehicle within the 8 years or 100,000 miles term."

Class Action Complaint
Case No.

140.    Defendant's distributed the defective parts causing the battery defect in the Class Vehicles, and said parts are covered by Defendant's warranties granted to all Class Vehicle purchasers and lessors.

141.    Defendant's breached these warranties by selling and leasing Class Vehicles with the battery defect, requiring repair or replacement within the applicable warranty periods, and refusing to honor the warranties by providing free repairs or replacements during the applicable warranty periods sufficient for the Class Vehicles to be restored to their advertised qualities.

142.    Plaintiffs each notified Defendant of its breach within a reasonable time, and/or were not required to do so because affording Defendant a reasonable opportunity to cure its breaches would have been futile. In any event, Defendant knows about the defect but instead chose to conceal it until just recently as a means of avoiding compliance with its warranty obligations.

143.    As a direct and proximate cause of Defendant's breach, Plaintiffs and the other Class members bought or leased Class Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their Class Vehicles suffered a diminution in value.

144.    Any attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Defendant's warranty limitations are unenforceable because it knowingly sold a defective product without giving notice of the Battery Defect to Plaintiffs or the Class.

145.    The time limits contained in Defendant's warranty period were also unconscionable and inadequate to protect Plaintiffs and Class members. Among other things, Plaintiffs and Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM. A gross disparity in bargaining power existed between Defendant and the Class members because Defendant knew or

Class Action Complaint
Case No.

should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

146.    Plaintiffs and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct.

## COUNT VI:

### BREACH OF EXPRESS WARRANTY

### (Cal. Com. Code § 2313)

### (By Plaintiffs Pankow, Cohen, and Cannon on behalf of the Nationwide Class, or alternatively, the California Class)

147.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

148.    Plaintiffs Pankow, Cohen, and Cannon bring this claim on behalf of themselves and on behalf of the members of the Nationwide Class and the California Class.

149.    Defendant provided all purchasers and lessees of the Class Vehicles with the express warranties described herein, which became part of the basis of the parties' bargain. Accordingly, Defendant's warranties are express warranties under state law.

150.    In the course of selling its new vehicles, Defendant expressly warranted in writing that the Class Vehicles are covered by General Motors' new vehicle limited warranty, including the 8-year/100,000 new vehicle limited warranty on electric components. The new vehicle limited warranty covers "repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period" and provides that "[w]arranty repairs, including towing, parts, and labor, will be made at no charge." Furthermore, General Motors' warranty provides that "[i]n addition to the initial owner of the vehicle, the coverage described in this Chevrolet Bolt, Bolt EV, and Malibu Hybrid

-30-

Class Action Complaint
Case No.

warranty is transferable at no cost to any subsequent person(s) who assumes ownership of the vehicle within the 8 years or 100,000 miles term."

151.   Defendant distributed the Class vehicles with the Battery Defect, and said parts are covered by Defendant's warranties granted to all Class Vehicle purchasers and lessors.

152.   Defendant breached these warranties by selling and leasing Class Vehicles with the Battery Defect, requiring repair or replacement within the applicable warranty periods, and refusing to honor the warranties by providing free repairs or replacements during the applicable warranty periods and, instead, choosing to mitigate the danger of the Battery Defect by limiting the charging capacity and, consequently, the range of the Class Vehicles.

153.   Plaintiffs notified Defendant of its breach within a reasonable time, and/or was not required to do so because affording Defendant a reasonable opportunity to cure its breaches would have been futile. Defendant also knew about the Battery Defect but chose instead to conceal it to avoid complying with its warranty obligations.

154.   As a direct and proximate cause of Defendant's breach, Plaintiffs and the other Class members bought or leased Class Vehicles they otherwise would not have, overpaid for the Class Vehicles, did not receive the benefit of their bargain, and their Class Vehicles suffered a diminution in value. Plaintiffs Pankow, Cohen, and Cannon and the Class members have incurred and will continue to incur costs related to the Battery Defect.

155.   Any attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Defendant's warranty limitations are unenforceable because it knowingly sold a defective product and failed to give timely notice of the Battery Defect to Plaintiffs or the Class.

156.   The time limits contained in Defendant's warranty period were also unconscionable and inadequate to protect Plaintiffs and the Class members. Among other

Class Action Complaint
Case No.

things, Plaintiffs and the Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendant. A gross disparity in bargaining power existed between Defendant and the Class members because Defendant knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

157.    Plaintiffs and the Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct.

## COUNT VII
## BREACH OF IMPLIED WARRANTY
### (Cal. Com. Code § 2314)
**(By Plaintiffs Pankow, Cohen, and Cannon on behalf of the Nationwide Class, or alternatively, the California Class)**

158.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

159.    Plaintiffs Pankow, Cohen, and Cannon bring this claim on behalf of themselves and on behalf of the members of the Nationwide Class and the California Class.

160.    Defendant was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased.

161.    Defendant provided Plaintiffs and the other Class members with an implied warranty that the Class Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. However, these vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Battery Defect can manifest and result in spontaneous ignition and fire when fully or nearly fully charged and are not safe to operate at the Class Vehicles' advertised range..

-32-

162.   Therefore, the Class Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

163.   Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles Defendant manufactured, supplied, distributed, and/or sold were safe and reliable for providing transportation, and would not experience premature and catastrophic failure; and (ii) a warranty that the Class Vehicles would be fit for their intended use while being operated.

164.   Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and the other Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles suffer from the Battery Defect.

165.   Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

166.   After Plaintiffs received the injuries complained of herein, notice was given by Plaintiffs to Defendant, by direct communication with GM requesting the repair of the Battery Defect, as well as by the filing of this lawsuit in the time and in the manner and in the form prescribed by law, of the breach of said implied warranty.

167.   As a legal and proximate result of the breach of said implied warranty, Plaintiffs sustained the damages herein set forth.

168.   Plaintiffs and Class members are, therefore, entitled to damages in an amount to be proven at the time of trial.

**COUNT VIII**

**VIOLATION OF THE SONG-BEVERLY ACT – BREACH OF IMPLIED WARRANTY**

**(Cal. Civ. Code §§ 1792, 1791.1, *et seq.*)**

**(Cal. Com. Code § 2314)**

**(By Plaintiffs Pankow, Cohen, and Cannon on behalf of the Nationwide Class, or alternatively, the California Class)**

169.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

170.   Plaintiffs Pankow, Cohen, and Cannon bring this claim on behalf of themselves and on behalf of the members of the Nationwide Class and the California Class.

171.   At all relevant times hereto, Defendant was the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Defendant knew or should have known of the specific use for which the Class Vehicles were purchased.

172.   Defendant provided Plaintiffs and the Class members with an implied warranty that the Class Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. The Class Vehicles, however, are not fit for their ordinary purpose because, inter alia, the Class Vehicles suffered from an inherent Battery Defect at the time of sale.

173.   The Class Vehicles are not fit for the purpose of providing safe and reliable transportation because of the defect.

174.   Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, inter alia, the following: (i) a warranty that the Class Vehicles were manufactured, supplied, distributed, and/or sold by Defendant were safe and reliable for providing transportation and would not prematurely and catastrophically fail; and (ii) a warranty that the Class Vehicles would be fit for their

Class Action Complaint
Case No.

intended use – providing safe and reliable transportation – while the Class Vehicles were being operated.

175.   Contrary to the applicable implied warranties, the Class Vehicles were not fit for their ordinary and intended purpose. Instead, the Class Vehicles are defective, including, but not limited to, the suspension and steering linkage defect.

176.   Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

## COUNT IX
## COMMON LAW FRAUDULENT CONCEALMENT
### (Based on California Law)
### (By Plaintiffs Pankow, Cohen, and Cannon on behalf of the Nationwide Class, or alternatively, the California Class)

177.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

178.   Plaintiffs Pankow, Cohen, and Cannon bring this claim on behalf of themselves and on behalf of the members of the Nationwide Class and the California Class.

179.   Defendant made material omissions concerning a presently existing or past fact. For example, Defendant did not fully and truthfully disclose to its customers the true nature of the Battery Defect, which was not readily discoverable. As a result, Plaintiffs and the other Class members were fraudulently induced to lease and/or purchase the Class Vehicles with the said Battery Defect and all problems resulting from it.

180.   Defendant made these statements with knowledge of their falsity, intending that Plaintiffs and the Class members relied on them.

181.   As a result of these omissions and concealments, Plaintiffs and the Class members incurred damages including loss of intrinsic value and out-of-pocket costs related to loss of energy efficiency in their Class Vehicles.

-35-

182. Plaintiffs and the Class members reasonably relied on Defendant's omissions and suffered damages as a result.

## C. Claims Brought on Behalf of the Illinois Class

### COUNT X

### VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

### (815 Ill. Comp. Stat. 505/1, *et seq*. and 720 Ill. Comp. Stat. 295/1A)

### (By Plaintiff Hickey on behalf of the Illinois Class)

183. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

184. Plaintiff Hickey brings this claim on behalf of himself and on behalf of the members of the Illinois Class.

185. The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2 prohibits unfair or deceptive acts or practices in connection with any trade or commerce. Specifically, the Act prohibits suppliers from representing that their goods are of a particular quality or grade they are not.

186. Defendant is a "person" as that term is defined in the Illinois Consumer Fraud and Deceptive Practices Act, 815 Ill. Comp. Stat. 505/1(c).

187. Plaintiff is a "consumer" as that term is defined in the Illinois Consumer Fraud and Deceptive Practices Act, 815 Ill. Comp. Stat. 505/1(e).

188. Defendant's unfair or deceptive acts or practices occurred repeatedly in its trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

189. Defendant knew that the Class Vehicles' batteries were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

190. Defendant had the duty to Plaintiff and the Class members to disclose the battery defect and the defective nature of the Class Vehicles because:

Class Action Complaint
Case No.

a. Defendant was in a superior position to know the true state of facts about the battery defect and its associated costs;

b. Plaintiff and the Class members could not reasonably have been expected to learn or discover that the Class Vehicles had defects until those defects became manifest;

c. Defendant knew that Plaintiff and the Class members could not reasonably have been expected to learn about or discover the battery defect and the effect it would have on the Class Vehicles' range and energy efficiency.

191. In failing to disclose the battery defect and its resulting safety risks and efficiency decreases, Defendant has knowingly and intentionally concealed material facts and breached its duty to disclose.

192. The facts Defendant concealed or did not disclose to Plaintiff and the Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Vehicles or pay a lesser price. Had Plaintiff and the Class known the Class Vehicles were defective, they would not have purchased the Class Vehicles or would have paid less for them.

193. Defendant's conduct caused Plaintiff's damages as alleged.

194. As a result of Defendant's wrongful conduct, Plaintiff and the Illinois Class have been damaged in an amount to be proven at trial, including, but not limited to, actual damages, court costs, and reasonable attorneys' fees pursuant to 815 Ill. Comp. Stat. 505/1, *et seq.*

Class Action Complaint
Case No.

# COUNT XI

## VIOLATION OF THE ILLINOIS UNIFORM DECEPTIVE
## TRADE PRACTICES ACT

### (815 Ill. Comp. Stat. 510/1, *et. seq*. and
### 720 Ill. Comp. Stat. 295/1A)

#### (By Plaintiff Hickey on behalf of the Illinois Class)

195. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

196. Plaintiff Hickey brings this claim on behalf of himself and on behalf of the members of the Illinois Class.

197. 815 Ill. Comp. Stat. 510/2 provides that a "person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation," the person does any of the following: "(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; . . . (5) represents that goods or services have sponsorship, approval, characteristics ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have; . . . (7) represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another; . . . (9) advertises goods or services with intent not to sell them as advertised; . . . [and] (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

198. Defendant is a "person" within the meaning of 815 Ill. Comp. Stat. 510/1(5).

199. The vehicles sold to Plaintiff and the Illinois Class were not of the particular sponsorship, approval, characteristics, ingredients, uses benefits, or qualities represented by Defendant.

200. The vehicles sold to Plaintiff and the Illinois Class were not of the particular standard, quality, and/or grade represented by Defendant.

-38-

201. Defendant caused to be made or disseminated through Illinois and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care Defendant should have known to be untrue and misleading to consumers, including Plaintiff and other Class members.

202. Defendant has violated section 17500 because its misrepresentations and omissions regarding the safety, reliability, functionality, and energy efficiencies of the Class Vehicles were material and likely to deceive a reasonable consumer.

203. Plaintiff Hickey and the other Illinois Class members have suffered injuries in fact, including the loss of money or property, resulting from Defendant's unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Class Vehicles, Plaintiff and the other Illinois Class members relied on Defendant's misrepresentations and/or omissions with respect to the Class Vehicles' safety and reliability. Defendant's representations were untrue because it distributed the Class Vehicles with the Battery Defect. Had Plaintiff Hickey and the other Class members known this, they would not have purchased or leased the Class Vehicles or would not have paid as much for them. Accordingly, Plaintiff and the other Illinois Class members did not receive the benefit of their bargain.

204. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of GM's business. GM's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the state of California and nationwide.

205. Defendant's conduct was knowing and/or intentional and/or with malice and/or demonstrated a complete lack of care and/or reckless and/or was in conscious disregard for the rights of Plaintiff and the Illinois Class.

206. As a result of the foregoing wrongful conduct of Defendant, Plaintiff and the Illinois Class have been damaged in an amount to proven at trial, including, but not limited to actual and punitive damages, equitable relief and reasonable attorneys' fees.

-39-

## COUNT XII

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (810 Ill. Comp. Stat. 5/2-314 and 810 Ill. Comp. Stat. 5/2A-212)

### (By Plaintiff Hickey on behalf of the Illinois Class)

207.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

208.   Plaintiff Hickey brings this claim on behalf of himself and on behalf of the members of the Illinois Class.

209.   Defendant impliedly warranted that its vehicles were of good and merchantable quality and fit, and safe for their ordinary intended use – transporting the driver and passengers in reasonable safety during normal operation, and without unduly endangering them or members of the public.

210.   Defendant breached the implied warranty that the vehicle was merchantable and safe for use as public transportation by marketing, advertising, distributing and selling vehicles with the common design and manufacturing defect.

211.   These defects existed at the time the vehicles left Defendant's manufacturing facilities and at the time they were sold to Plaintiff.

212.   These defects were the direct and proximate cause of damages to Plaintiff and the Illinois Class.

## COUNT XIII

## BREACH OF EXPRESS WARRANTIES

### (810 Ill. Comp. Stat. 5/2-313)

### (By Plaintiff Hickey on behalf of the Illinois Class)

213.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

214.   Plaintiff Hickey brings this claim on behalf of himself and on behalf of the members of the Illinois Class.

215.  Defendant expressly warranted—through statements and advertisements—that the vehicles were of high quality, and at a minimum, would work properly and safely.

216.  Defendant breached this warranty by knowingly selling vehicles with dangerous defects.

217.  Plaintiff Hickey and the Illinois Class have been damaged as a direct and proximate result of Defendant's breaches in that the Class Vehicles purchased by Plaintiff and the Illinois Class were, and are, worth far less than what they paid to purchase, which was reasonably foreseeable to Defendant. Benefits associated with the defective designs are vastly outweighed by the real risks associated with the Battery Defect.

218.  The vehicles were defective as herein alleged at the time they left Defendants' factories, and the vehicles reached Plaintiffs without substantial change in the condition in which they were sold.

219.  As a direct and proximate result of Defendants' breaches, Plaintiff Hickey and the Illinois Class have suffered damages, including, but not limited to, diminution in value, return of lease payments and penalties, and injunctive relief related to future lease payments or penalties.

## COUNT XIV

## FRAUDULENT CONCEALMENT / FRAUD BY OMISSION

### (Based on Illinois Law)

### (By Plaintiff Hickey on behalf of the Illinois Class)

220.  Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

221.  Plaintiff Hickey brings this claim on behalf of himself and on behalf of the members of the Illinois Class.

222.  Defendant intentionally concealed the above-described material safety information, or acted with reckless disregard for the truth, and denied Plaintiff and the Illinois Class highly relevant information to their purchasing decision.

-41-

223. Defendant further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car that the vehicles they were selling were new, had no significant defects and would perform and operate properly when driven in normal usage.

224. Defendant knew these representations were false when made.

225. The vehicles purchased or leased by Plaintiff and the Illinois Class were, in fact, defective, unsafe, and unreliable, because the vehicles' batteries were are susceptible to bursting into flame when fully charged or nearly fully charged.

226. Defendant had a duty to disclose that these vehicles were defective, unsafe and unreliable in that the vehicles were subject to battery failure because Plaintiff relied on Defendant's material representations that the Class Vehicle's battery could be safely charged to permit the vehicles to travel for a range of 238 miles on a single full charge.

227. The aforementioned concealment was material because if it had been disclosed Plaintiff would not have bought or leased the vehicles.

228. The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle. Defendant knew or recklessly disregarded that its representations were false, but intentionally made the false statements to sell vehicles.

229. Plaintiff Hickey relied on Defendant's reputation—along with Defendant's failure to disclose and Defendant's affirmative assurance that its vehicles would safely and reliably travel the disclosed driving range—when purchasing Defendant's vehicle.

230. Plaintiff and the Illinois Class have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase and/or the diminished value of the Class Vehicles.

231. Defendant's conduct was knowing, intentional, with malice, demonstrated a complete lack of care and was in reckless disregard for the rights of Plaintiff and the Illinois Class. Plaintiff and the Illinois Class are therefore entitled to an award of punitive damages.

-42-

**D.**     **Claims Brought on Behalf of the Washington Class**

**COUNT XV**

**VIOLATION OF THE CONSUMER PROTECTION ACT**

**(Rev. Code Wash. Ann. §§ 19.86.010, *et seq.*)**

**(By Plaintiff DeRosa on behalf of the Washington Class)**

232.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

233.   Plaintiff DeRosa brings this claim on behalf of himself and on behalf of the members of the Washington Class.

234.   Defendant's conduct as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Defendant's manufacture and sale of vehicles with the Battery Defect, which Defendant failed to adequately investigate, disclose and remedy, and its misrepresentations and omissions regarding the safety, reliability, and range of the Class Vehicles.

235.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

236.   Defendant's actions impact the public interest because Plaintiff was injured in the same way as tens of thousands of others purchasing and/or leasing Defendant's vehicles as a result of Defendant's generalized course of deception. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business.

237.   Plaintiff DeRosa and the Washington Class were injured as a result of Defendant's conduct. Plaintiff and the Washington Class overpaid for the Class Vehicles and did not receive the benefit of their bargain, and thus the Class Vehicles have suffered a diminution in value.

238.   Defendant's conduct proximately caused the injuries to Plaintiffs and the Washington Class.

Class Action Complaint
Case No.

239.   Defendant is liable to Plaintiff and the Washington Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

240.   Pursuant to Wash. Rev. Code. Ann. § 19.86.095, Plaintiff will serve the Washington Attorney General with a copy of this complaint as Plaintiff seek injunctive relief.

**COUNT XVI**

**BREACH OF EXPRESS WARRANTY**

**(Rev. Code Wash. § 62A.2-313)**

**(By Plaintiff DeRosa on behalf of the Washington Class)**

241.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

242.   Plaintiff DeRosa brings this claim on behalf of himself and on behalf of the members of the Washington Class.

243.   Defendant is and was at all relevant times a merchant with respect to motor vehicles.

244.   In the course of selling its vehicles, Defendant expressly warranted in writing that the Class Vehicles were covered by a new vehicle limited warranty.

245.   Defendant breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Defendant. Defendant has not repaired or adjusted, and has been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

246.   In addition to this new vehicle limited warranty, Defendant expressly warranted several attributes, characteristics and qualities, as set forth above.

247.   Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the Class whole and because Defendant has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

248.    Accordingly, Plaintiff's recovery is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff seeks all remedies as allowed by law.

249.    Also, at the time Defendant warranted and sold the Class Vehicles, Defendant wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Class Vehicles. Plaintiff and the Class were therefore induced to purchase the Class Vehicles under false and/or fraudulent pretenses.

250.    The damages flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," and any limitation on available remedies would be insufficient to make Plaintiff and the Washington Class whole.

251.    Finally, as a result of Defendant's breach of warranties as set forth herein, Plaintiff and the Washington Class assert as an additional and/or alternative remedy, as set forth in Rev. Code Wash. § 62A.2-608, for a revocation of acceptance of the goods, and for a return to Plaintiff and to the Washington Class the purchase price of all Class Vehicles currently owned.

252.    As a direct and proximate result of Defendant's breach of express warranties, Plaintiff and the Washington Class have been damaged in an amount to be determined at trial.

# COUNT XVII
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Rev. Code Wash. § 62A.2-314/315)
### (By Plaintiff DeRosa on behalf of the Washington Class)

253.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

254.    Plaintiff DeRosa brings this claim on behalf of himself and on behalf of the members of the Washington Class.

255.    Defendant is and was at all relevant times a merchant with respect to motor vehicles.

Class Action Complaint
Case No.

256.   A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

257.   The Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that the battery cannot be charged safely without the risk of catastrophic failure causing fire and potential explosion.

258.   Privity is not required in this case because Plaintiff and the Washington Class are intended third-party beneficiaries of contracts between GM and its dealers; specifically, they are the intended beneficiaries of GM's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

259.   As a direct and proximate result of GM's breach of the warranties of merchantability, Plaintiff and the Washington Class have been damaged in an amount to be proven at trial.

**COUNT XVIII**

**FRAUD BY CONCEALMENT**

**(Based On Washington Law)**

**(By Plaintiff DeRosa on behalf of the Washington Class)**

260.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

261.   Plaintiff DeRosa brings this claim on behalf of himself and on behalf of the members of the Washington Class.

262.   As set forth above, Defendant concealed and/or suppressed material facts concerning the safety of the Class Vehicles.

Class Action Complaint
Case No.

263.    Defendant actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiff and the Washington Class to purchase the Class Vehicles at a higher price, which did not match their true value.

264.    Defendant still have not made full and adequate disclosure and continues to defraud Plaintiff and the Washington Class.

265.    Plaintiff and the Washington Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiff and the Washington Class' actions were justified. Defendant had exclusive control of the material facts and such facts were not known to the public or the Washington Class.

266.    As a result of the concealment and/or suppression of the facts, Plaintiff and the Washington Class sustained damage. For those Plaintiffs and the Class who elect to affirm the sale, these damages, include the difference between the actual value of that which Plaintiff and the Washington Class paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits. For any Plaintiff or member of the Washington Class who want to rescind their purchases, then such Plaintiffs and Class members are entitled to restitution and consequential damages.

267.    Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Washington Class' rights and well-being to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**E.** **Claims Brought on Behalf of Individuals**

**COUNT XIX:**

**STRICT PRODUCT LIABILITY**

**(Based on California Law)**

**(By Plaintiffs Michelle Pankow and E.G.P., individually)**

268.	The Pankow Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

269.	The Pankow Plaintiffs, individually, are informed and believe and based thereon allege that Defendant designed, manufactured, researched, tested, assembled, installed, marketed, advertised, distributed, and sold a certain 2017 Chevrolet Bolt, bearing Vehicle Identification Number 1G1FX6S07H4176903 (hereinafter referred to as the "subject vehicle").

270.	At all times relevant hereto, Defendant knew that the subject vehicle would be operated and inhabited by consumers without inspection for defects.

271.	At the time of the fire described above, the subject vehicle was being used in a manner and fashion that was foreseeable by Defendant, and in a manner in which it was intended to be used.

272.	Defendant designed, engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to test, inspected or failed to inspect, repaired, retrofitted or failed to retrofit, failed to recall, labeled, advertised, promoted, marketed, supplied, distributed, wholesaled, and sold the subject vehicle and its component parts and constituents, which Defendant intended to be used for the purpose of use as a passenger vehicle, and other related activities.

273.	The subject vehicle was unsafe for its intended use by reason of defects in its manufacture, design, testing, components and constituents, so that it would not safely serve its purpose, but would instead expose the users of said product, and others, to serious injuries because of Defendant's failure to properly guard and protect the users of the subject vehicle, and others, from the defective design of said product.

-48-

274. Defendant designed the subject vehicle defectively, causing it to fail to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

275. The risks inherent in the design of the subject vehicle outweigh significantly any benefits of such design.

276. The Pankow Plaintiffs were not aware of the aforementioned defects.

277. As a legal and proximate result of the aforementioned defects of the subject vehicle, the Pankow Plaintiffs sustained the injuries and damages set forth herein.

278. The Pankow Plaintiffs, therefore, entitled to damages in an amount to be proven at the time of trial.

## COUNT XX:

## NEGLIGENCE

### (Based on California Law)

### (By Plaintiffs Michelle Pankow and E.G.P, individually)

279. The Pankow Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

280. At all times herein mentioned, Defendant designed, manufactured, assembled, analyzed, recommended, merchandised, advertised, promoted, distributed, supplied, and sold to distributors and retailers for sale, the subject vehicle and/or its component parts.

281. Defendant owed the Pankow Plaintiffs a duty to exercise reasonable care in the design, testing, manufacture, assembly, sale, distribution and servicing of the subject vehicle, including a duty to ensure that the subject vehicle did not cause the Pankow Plaintiffs, other users, bystanders, or the public, unnecessary injuries or deaths.

282. Defendant knew or should have known that the subject vehicle is defectively designed and inherently dangerous.

-49-

283.   Defendant knew or should have known that the subject vehicle was defectively designed and/or manufactured and was therefore prone to catastrophic failure and a threat to life and property.

284.   Defendant failed to exercise ordinary care and breached its duties by, among other things:

  a.   Failure to use due care in the manufacture, distribution, design, sale, testing, and servicing of the subject vehicle and its component parts in order to avoid the aforementioned risks to individuals;

  b.   Failure to provide adequate warning of the propensity of battery failure;

  c.   Failure to incorporate within the vehicle and its design reasonable safeguards and protections against battery failure and the consequences thereof;

  d.   Failure to make timely correction to the design of the subject vehicle to correct the battery failure;

  e.   Failure to adequately identify and mitigate the hazards associated with the battery failure in accordance with good engineering practices and other ways; and,

  f.   Were otherwise careless or negligent.

285.   Defendant's aforementioned negligent acts and omissions were the direct and proximate cause of the Pankow Plaintiffs' damages.

286.   Defendant's negligent acts and omissions caused serious and significant emotional distress to the Pankow Plaintiffs.

287.   239. The Pankow Plaintiffs are, therefore, entitled to damages in an amount to be proven at trial, together with interest thereon and costs.

**COUNT XXI:**

**FAILURE TO WARN**

**(Based on California Law)**

**(By Plaintiffs Michelle Pankow and E.G.P, individually)**

288.   The Pankow Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

289.   Defendant knew that the subject vehicle, and its component parts, would be purchased and used without inspection for defects in the design of the vehicle.

290.   The subject vehicle was defective when it left Defendant's control.

291.   Defendant knew or should have known of the substantial dangers involved in the reasonably foreseeable use of these vehicles, whose defective design, manufacturing, and lack of sufficient warnings caused them to have an unreasonably dangerous propensity to cause battery overload and failure.

292.   Defendant failed to adequately warn of the substantial dangers known or knowable at the time of the defective vehicles' design, manufacture, and distribution.

293.   Defendant failed to provide adequate warnings, instructions, guidelines or admonitions to members of the consuming public, including the Pankow Plaintiffs, of the defects, which Defendant knew, or in the exercise of reasonable care should have known, to have existed in the subject vehicle, and its component parts.

294.   Defendant knew that these substantial dangers are not readily recognizable to an ordinary consumer and that consumers would purchase and use these products without inspection.

295.   At the time of the Pankow Plaintiffs' injuries, the subject vehicle was being used in the manner Defendant intended, and in a manner that was reasonably foreseeable as involving substantial danger not readily apparent to users.

296.   The Pankow Plaintiffs' damages were the legal and proximate result of Defendant's actions and inactions, as Defendant owed a duty to the Pankow Plaintiffs by designing, manufacturing, warning about, and distributing the subject vehicle.

Class Action Complaint
Case No.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the Class pray for judgment as follows:

    A.    for an order certifying this action as a class action;

    B.    for an order appointing Michelle Pankow, Arthur Cohen, Bruce James Cannon, Michael Hickey, and John DeRosa as representative of the Class and counsel of record as Class counsel;

    C.    for an award of actual, general, special, incidental, statutory, compensatory and consequential damages on claims for fraud and in an amount to be proven at trial, except that certain Plaintiffs seek only equitable relief for violation of the Consumer Legal Remedies Act at this time;

    D.    for an award of exemplary and punitive damages in an amount to be proven at trial;

    E.    for an order enjoining the wrongful conduct alleged herein;

    F.    for costs;

    G.    for interest; and

    H.    for such other relief as the Court deems just and proper.

Dated: November 29, 2020       Respectfully submitted,

MCCUNE WRIGHT AREVALO LLP

By:  */s/ David C. Wright*

David C. Wright
Richard D. McCune
Steven A. Haskins
Mark I. Richards
MCCUNE WRIGHT AREVALO, LLP
3281 E. Guasti, Road, Suite 100
Ontario, California 91761
Telephone: 909-557-1250
Facsimile:    909-557-1275
Email: dcw@mccunewright.com
Email: rdm@mccunewright.com
Email: sah@mccunewright.com
Email: mir@mccunewright.com
Attorneys for Plaintiffs and the Putative Class

Class Action Complaint
Case No.

## JURY DEMAND

Plaintiff, on behalf of himself and the putative Class, demand a trial by jury on all issues so triable.

MᴄCᴜɴᴇ Wʀɪɢʜᴛ Aʀᴇᴠᴀʟᴏ ʟʟᴘ

By: _/s/ David C. Wright_

David C. Wright
Richard D. McCune
Steven A. Haskins
Mark I. Richards
MCCUNE WRIGHT AREVALO, LLP
3281 E. Guasti, Road, Suite 100
Ontario, California 91761
Telephone: 909-557-1250
Facsimile:    909-557-1275
Email: dcw@mccunewright.com
Email: rdm@mccunewright.com
Email: sah@mccunewright.com
Email: mir@mccunewright.com

Attorneys for Plaintiffs and the Putative Class